**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**UNITED STATES OF AMERICA**,

    *Plaintiff*,

v.

**TIMOTHY BRYAN REECE**,

    *Defendant*.

CAUSE NO. 3:21-CR-64-CWR-ASH

**ORDER**

Before the Court is Timothy Bryan Reece's motion to dismiss. Docket No. 47. For the reasons that follow, the motion will be granted.

**I.  Factual and Procedural History**

Federal law enforcement initiated this case in May 2021 via a criminal complaint. It alleged that in 2020 and 2021, Timothy Bryan Reece enticed a minor to engage in sexually explicit conduct and produced child pornography. After filing the complaint, the government arrested and had Reece detained while it presented evidence to a grand jury. In June 2021, the grand jury returned an indictment with those two charges. In July 2021, the Magistrate Judge held an arraignment and released Reece on bond, with ankle monitoring, until his trial.

It is now 2025. Reece has not been tried. His present motion contends that the indictment should be dismissed because the government has violated his constitutional right to a speedy trial. The government disagrees. It says there has been no constitutional violation because the delay arose from agreed continuances and a competency determination.

The initial delay was in fact unproblematic. Between July 2021 and April 2023, the government and Reece repeatedly agreed to continue the trial of this matter. The Court granted those requests. There is no speedy trial violation for this 21-month period. *See United States v. Shah*, 95 F.4th 328, 364 (5th Cir. 2024) (observing that "defendants are precluded from challenging any delay to which they have consented").

Each agreed continuance pushed the trial setting back approximately 60 days. The last motion to continue—an April 2023 submission by Reece—would have pushed the trial from May to July 2023. Docket No. 42. This motion was never adjudicated for reasons discussed below, but its filing indicates that Reece consented to a trial setting in July 2023. Up to that point, therefore, there was no speedy trial violation.

The situation nevertheless started to change in April 2023, when the parties told the Court that a competency hearing was necessary. Evidence was heard on that issue in a May 2023 hearing. The expert testimony showed that Reece was not competent to stand trial by way of an intellectual disability caused at birth.[1] It was not clear, though, whether Reece was competent at the time of the offenses. The Court directed the parties to brief the issue and said a hearing would be scheduled.

Six months later—in November 2023—the Court called everyone in for a status conference. The parties discussed the expert's September 2023 supplemental report, which concluded that Reece's intellectual defects were so severe that he didn't understand that his conduct was wrong at the time of the offenses.[2] The expert also concluded that Reece did not

---

[1] Some of those findings are recited in a separate Order issued this day, restricted to counsel of record.
[2] The Clerk's Office is directed to file the supplemental report under seal.

2

have any of the risk factors known to increase the likelihood of potential dangerousness to the community.

The Court then asked, "how should the parties proceed, or how should the Court proceed with this matter? . . . [B]ecause it's been six months, basically." Docket No. 46 at 6. Counsel for the government said she was "lost for the next step." *Id.* at 7. And after more discussion, the Court asked the parties to research how criminal cases should proceed when a defendant lacks *mens rea*—*i.e.*, knowledge that what he did was wrong. The Court asked counsel "to tell me when we can call it back up." *Id.* at 19. The minute entry on the docket directed counsel "to report back to the Court on its inquiry of the issues discussed during the Bench conference."

In October 2024, the Court emailed the parties asking for a status update. The government provided a written update. It explained that although counsel "have been in discussion regarding the filing of a Joint Status [report,] . . . we have been unable to complete a joint report."

In February 2025, the Court scheduled another status conference. Reece then filed the present motion. The Court cancelled the status conference and directed the parties to fully brief the issue. With the briefing now complete, the motion is ready for adjudication.

**II.    Legal Standard**

The Sixth Amendment to the Constitution states, in relevant part, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. "The history of the right to a speedy trial and its reception in this country clearly establish that it is one of the most basic rights preserved by our Constitution." *Klopfer v. North Carolina*, 386 U.S. 213, 226 (1967). It "is an important safeguard to prevent undue and

oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself." *United States v. Loud Hawk*, 474 U.S. 302, 312 (1986) (cleaned up).

In evaluating speedy trial claims, courts consider "(1) the length of the delay, (2) the reason for it, (3) the defendant's diligence in asserting his Sixth Amendment right, and (4) prejudice to the defendant resulting from the delay." *United States v. Frye*, 489 F.3d 201, 209 (5th Cir. 2007) (cleaned up). These are called "the *Barker* factors," as they are drawn from the Supreme Court's decision in *Barker v. Wingo*, 407 U.S. 514, 530 (1972).

### III. Discussion

The government argues that there is no speedy trial violation because the delays were caused by agreed continuances and the competency evaluation. The Court credits the first argument. *See Shah*, 95 F.4th at 364. As discussed above, Reece's consent to a series of 60-day delays extends to July 2023. The second argument, though, warrants more discussion.

The government is correct that federal law excludes from statutory speedy trial calculations those delays "resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant." 18 U.S.C. § 3161(h)(1)(A). Reece grounds his speedy trial argument in the Sixth Amendment rather than that statute, but honoring that principle here suggests excusing the reasonable time that passed until the expert's September 2023 supplemental report—the one covering Reece's competency at the time of the offenses and risk of future dangerousness.

Reece's counsel emailed the expert's supplemental report to the Court on September 25, 2023. Affording a reasonable time for the government to digest and prepare for a hearing on that supplemental report takes us to the November 2023 status conference.

4

The issue then becomes how we should evaluate the time that followed: the months from November 2023 to February 2025. It was a long time, and nothing of significance happened during it.

The Government concedes that at the November 2023 hearing, this Court "found the defendant not competent at the time of the offenses and not competent to stand trial." Docket No. 51 at 3. Though the Court did not memorialize that finding in a written Order, from that point onward competency wasn't a fact in dispute. No one disagreed that Reece lacked competency to stand trial, lacked an understanding of the wrongfulness of his conduct at the time of the offenses, and lacked indicia of future dangerousness. The government did not challenge those essential findings then or, for that matter, ask for them to be reduced to writing to move the case forward. And it doesn't seek any extra time to challenge them now; its current response again concedes Reece's ongoing intellectual disability, incompetence, and inability to be restored to competence.

In truth, the outstanding issue from November 2023-forward was one for the lawyers, not an expert. What does the legal process require for criminal defendants lacking *mens rea*? What do you do when a person with an intellectual disability lacked knowledge of wrongdoing at the time, cannot be lawfully tried now, lacks signs of dangerousness, and cannot be restored to competence? It is a dilemma, to be sure. Yet the government simply didn't pursue an answer to it, or answer it today alongside the current briefing.[3] One thing is for certain: just as it had the power to present evidence to a grand jury seeking an indictment,

---

[3] To be clear, the Court appreciates the professionalism and candor demonstrated by the Assistant United States Attorney prosecuting this case. She has been a voice for victims in all manner of sex offense cases in this District. The term "the government" in this Order refers to her Office, which through three sets of leadership has not identified a plausible path forward for this case.

the government had the power to dismiss an indictment of a non-viable case. *See United States v. Harris*, No. 3:19-CR-16-CWR-LRA-1, Docket No. 43 (S.D. Miss. Feb. 21, 2020) (dismissing indictment after court found that the defendant was neither competent to assist his counsel at trial nor competent on the date of the crime alleged). It did not.

The Court now turns to the *Barker* factors. The government's response quotes them and provides two sentences of argument on them. They are, "[t]his defendant should not be granted a dismissal based on delays to which the defendant himself deliberately caused. *United States v. Whitfield*, 950 F. 3d 325 (5th Cir. 2009)," and "[t]he defendant remains not competent to stand trial, and this case cannot proceed to trial if the defendant remains not competent." Docket No. 51 at 5.

The first *Barker* factor, "length of delay, functions as a triggering mechanism." *United States v. Duran-Gomez*, 984 F.3d 366, 374 (5th Cir. 2020) (citation omitted). It is measured by "the interval between accusation and trial." *Doggett v. United States*, 505 U.S. 647, 651 (1992). "The longer the delay between indictment and trial extends beyond the bare minimum, the heavier this factor weighs in a defendant's favor, because the presumption that pretrial delay has prejudiced the accused intensifies over time." *United States v. Molina-Solorio*, 577 F.3d 300, 305 (5th Cir. 2009) (cleaned up).

The Court pauses here for a brief aside. Under current law, courts do not have to conduct a full *Barker* analysis unless this first factor, length of delay, is "at least one year." *Duran-Gomez*, 984 F.3d at 374. This precedent is applied faithfully below. The Court would simply note that if the Fifth Circuit or Supreme Court ever decides to take a more textualist or originalist approach to *this* constitutional right, in the way many of those Judges and Justices consider critical to their interpretation of *other* parts of the constitution, then this one-

6

year trigger might no longer constitute good law. A yearlong delay isn't "speedy" under any ordinary definition of that word, and that length of time doesn't comport with the historical understanding of a speedy trial—which was apparently measured in months, not years. *See Klopfer*, 386 U.S. at 223-24. For as Sir Edward Coke wrote in the 17th century, the right was intended to allow "every subject of this realme" to "take his remedy by the course of the law, and have justice, and right for the injury done to him, freely without sale, fully without any deniall, and speedily without delay." *Id.* at 224 (citation omitted).

The Court now returns to the current standard. Because approximately 45 months elapsed between Reece's arrest and the filing of his motion to dismiss, the first factor favors him and requires a discussion of the remaining *Barker* factors. *See Duran-Gomez*, 984 F.3d at 374.

The second factor asks which party "is more to blame" for the delay. *Id.* (quoting *Vermont v. Brillon*, 556 U.S. 81, 90 (2009)).

> At one extreme, a deliberate delay to disadvantage the defense is weighted heavily against the government. At the other end of the spectrum, delays explained by valid reasons or attributable to the conduct of the defendant weigh in favor of the government. Between these extremes fall unexplained or negligent delays, which weigh against the government, but not heavily.

*Id.* (cleaned up). "Although negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun." *Molina-Solorio*, 577 F.3d at 305 (cleaned up).

Again, consistent with Circuit precedent and common sense, it would not be fair or just to assign blame to the government for agreed continuances. The speedy-trial concern genuinely began to accrue at the end of Reece's consent in July 2023, then became more salient

7

after the November 2023 status conference on the expert's supplemental report. At that point, the government needed to promptly respond to the final issue: what does the legal process require for defendants in Reece's situation? But more than a year passed after that with no activity, no response, and no effort to push the case forward. Accordingly, the Court finds that the delay between November 2023 and February 2025 favors Reece.

The third factor is Reece's diligence in asserting his Sixth Amendment right. It is well-established that Reece's agreed continuances early-on in this case did not "forever waive[]" his constitutional right to a speedy trial. *Barker*, 407 U.S. at 528. At the same time, precedent indicates that Reece's decision to invoke the right for the first time in 2025, via his present motion to dismiss, "is not evidence" of a desire for a speedy trial. *United States v. Harris*, 566 F.3d 422, 432 (5th Cir. 2009) (citation omitted). This factor weighs against Reece.

The *Barker* analysis ends with prejudice. "The speedy trial right is meant to protect a defendant from three principle types of prejudice: prevent oppressive pretrial incarceration; minimize accused's anxiety; and limit the possibility of his defense being impaired." *Frye*, 489 F.3d at 212 (cleaned up). Because "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify," however, "affirmative proof of particularized prejudice is not essential to every speedy trial claim." *Doggett*, 505 U.S. at 655.

The Supreme Court told us decades ago that defendants awaiting trial on bond are "unable to lead a normal life because of community suspicion and . . . anxiety." *Barker*, 407 U.S. at 527. The record of this case indicates that Reece has been unable to live normally for nearly four years. Reece has paid more than $5,600 in ankle monitoring co-pays. Docket No. 47 at 5. His every move is monitored; he must seek prior approval of a probation officer to

participate in and do certain activities like visiting the home of a family member and going to the grocery store. *Id.* When his plumbing at his home failed, he had to seek permission from the government to use the restroom at a nearby building. *Id.* This is not prejudice to the same degree that pretrial detention would constitute, to be sure, but it is prejudicial. This factor favors Reece.

Upon reviewing the factors, the Court finds that Reece has shown a violation of the Sixth Amendment. The first *Barker* factor shows a 45-month delay from the initiation of criminal charges to the filing of the present motion to dismiss. The second reveals no justification for more than a year's worth of the delay—an extended period of time during which the government failed to pursue the matter with reasonable diligence. The fourth *Barker* factor, meanwhile, shows how the government's delay has caused prejudice.

Reece's motion is therefore granted.[4] Because current law provides only one remedy for this type of constitutional violation, the case is dismissed "with prejudice." *United States v. Novelli*, 544 F.2d 800, 803 (5th Cir. 1977) (citation omitted).

## IV.   Conclusion

The motion to dismiss is granted. The Clerk shall close the case.

**SO ORDERED**, this the 11th day of March, 2025.

s/ Carlton W. Reeves<br>
UNITED STATES DISTRICT JUDGE

---

[4] The Court does not reach Reece's alternative argument, concerning whether a person indisputably unable to be restored to competence must be committed for the federal government to attempt such a restoration. *See* 18 U.S.C. § 4241(d).